

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 13-79-BLG-SPW |
| Plaintiff/Respondent, | |
| vs. | ORDER |
| ROBERT FARRELL ARMSTRONG, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Armstrong's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Armstrong is a federal prisoner proceeding pro se.

On November 16, 2015, Armstrong was given an opportunity to clarify or supplement his allegations. He responded on December 7, 2015. Counsel Colin Stephens was appointed to represent him on April 5, 2016. Armstrong filed an amended motion on August 15, 2016. On an unopposed motion, the United States was authorized to depose trial counsel, Chief Federal Defender Anthony Gallagher. On November 1, 2016, the United States filed its answer to the § 2255 motion. Armstrong was permitted to file a reply, *see* Order (Doc. 267) at 2 ¶ 2, but he did not do so.

Armstrong makes three claims for relief:

1. Counsel was ineffective because he did not obtain evidence showing that Armstrong was in jail for seven months from February 17, 2012, and so failed to support his objection to Armstrong's criminal history calculation.

2. Counsel was ineffective because he failed to call witnesses whose testimony might have reduced Armstrong's culpability and resulting advisory guideline range.

3. Counsel was ineffective in advising Armstrong of the consequences of pleading guilty or going to trial and the sentence he would receive.

Am. § 2255 Mot. (Doc. 266) at 28.

## I. Background

On September 20, 2013, a grand jury charged Armstrong with the following offenses:

| | |
|---|---|
| Count 1 | conspiring to distribute and possess with intent to distribute at least 500 grams of a substance containing methamphetamine or at least 50 grams of pure methamphetamine, a violation of 21 U.S.C. §§ 846 and 841(a)(1); |
| Count 2 | possessing with intent to distribute at least 500 grams of a substance containing methamphetamine or at least 50 grams of pure methamphetamine, a violation of 21 U.S.C. § 841(a)(1); |
| Count 3 | distributing a substance containing a detectable amount of methamphetamine, a violation of 21 U.S.C. § 841(a)(1); |
| Count 5 | distributing a substance containing at least five grams of pure methamphetamine, a violation of 21 U.S.C. § 841(a)(1); and |
| Count 10 | possessing a firearm in furtherance of the drug trafficking crime alleged in Count 1 or Count 2, a violation of 18 U.S.C. §§ 2 and 924(c)(1)(A). |

*See* Indictment (Doc. 1) at 1-6, 7, 9. Chief Federal Defender Anthony Gallagher

2

was appointed to represent Armstrong. Order (Doc. 17).

If convicted on Counts 1 or 2, Armstrong faced a mandatory minimum sentence of ten years in prison and a maximum of life. If convicted on Count 5, he faced a mandatory minimum of five years in prison and a maximum of 40 years. If convicted on Count 3, he faced a maximum of 20 years in prison. If convicted on Count 10, he faced a mandatory sentence of at least five years in prison, consecutive to any other sentence imposed. *See* 21 U.S.C. § 841(b)(1)(A), (B), (C); 18 U.S.C. § 924(c)(1)(A)(i), (D).

On January 3, 2014, the parties filed a fully executed plea agreement that was highly favorable to Armstrong. He agreed to plead guilty to Count 2. The United States agreed to dismiss the other counts and to seek a three-point downward adjustment for acceptance of responsibility. Significantly, the United States also agreed not to seek enhancement of Armstrong's sentence based on prior felony drug convictions,[1] thus averting, at the least, a mandatory minimum sentence of 20 years. *See* 21 U.S.C. § 841(b)(1)(A). The parties mutually and conditionally waived appeal. *See* Plea Agreement (Doc. 100) at 2-3 ¶¶ 2-3, 7 ¶ 6, 8

---

[1] If Armstrong had previously committed one felony drug offense, *see* 21 U.S.C. § 802(44), the mandatory minimum for conviction on Counts 1 and 2 would have been increased to twenty years. If previously convicted of two or more felony drug offenses, Armstrong would have received a mandatory sentence of life in prison for a conviction on either Count 1 or Count 2. *See* 21 U.S.C. § 841(b)(1)(A). Similarly, if convicted on Count 5, he would have faced a mandatory minimum sentence of ten years to life for any prior felony drug offense conviction. *Id.* § 841(b)(1)(B).

¶ 8. Armstrong pled guilty in open court on January 22, 2014. Minutes (Doc. 114).

A presentence report was prepared. Armstrong was held responsible for at least 1.5 kilograms of pure methamphetamine. Under the guidelines in effect at the time, the base offense level was 38. Armstrong received a two-point upward adjustment for possession of a firearm, a four-point upward adjustment for his role as an organizer, and a three-point downward adjustment for acceptance of responsibility. His total offense level was 41. In anticipation of U.S.S.G. Amendment 782, a general lowering of offense levels in the drug quantity table, *see* U.S.S.G. § 2D1.1(c), he received an additional two-point reduction to an offense level of 39.

With a criminal history category of IV, Armstrong's advisory guideline range was 360 months to life. On August 29, 2014, based on each party's recommendations, Armstrong received a significant downward departure or variance to a sentence of 240 months, to be followed by a five-year term of supervised release. Minutes (Doc. 236); Judgment (Doc. 237) at 2-3.

Armstrong did not appeal. His conviction became final on September 12, 2014. He timely filed his § 2255 motion on September 8, 2015. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).

## II. Claims and Analysis

Armstrong's claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). First, at this stage of the proceedings, Armstrong must allege facts sufficient to support an inference that counsel's performance fell below an objective standard of reasonableness. *Id.* at 687-88. Second, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

Despite counsel's deposition, it remains the case that Armstrong, at this point, must only allege facts in his motion that, if true, would support relief. The United States did not file a motion that would have required Armstrong to present evidence in opposition. *See, e.g.*, Fed. R. Civ. P. 12(d), 56(d), (e). Even so, the Court has considered whether the deposition, in light of the record of the case, is sufficient to support a reliable determination of the merits of Armstrong's claims. For the reasons that follow, it is.

### A. Claim 3: Decision to Plead Guilty

The United States asserts that the record of the change of plea hearing is

5

sufficient to demonstrate that counsel did not "promise" Armstrong he would be sentenced to ten years if he pled guilty. That is correct. The record establishes that Armstrong knew what the mandatory minimum and maximum sentences were and that he said no promises were made to him beyond those set forth in the plea agreement. *See* Change of Plea Tr. (Doc. 272) at 15:7-23, 19:10-20:1. (Otherwise, his guilty plea would not have been accepted.)

But Armstrong does not allege that counsel *promised* him a ten-year sentence. Nor does he allege that he did not know the statutory parameters of the potential sentence. He alleges that counsel told him his sentence would be ten years if he pled guilty and twenty if he did not. He appears to be talking about counsel's educated estimate of his likely sentence, *see, e.g.*, Gallagher Dep. (Doc. 273-2) at 26:6-19, not a promise or guarantee. This interpretation is supported by the fact that counsel requested a ten-year sentence. *See* Sentencing Mem. (Doc. 215) at 16; Draft Presentence Report ¶ 41 (Doc. 216-1).

Even so, Armstrong has not adequately made a case supporting further proceedings. In the specific context of challenging a guilty plea, the prejudice prong of the *Strickland* test requires the petitioner to show a "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Further, a "gross mischaracterization of the likely outcome" at sentencing,

6

"combined with . . . erroneous advice on the possible effects of going to trial," may support a finding that a guilty plea was involuntary. *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986).

Despite acknowledging the appropriate standard for showing prejudice, *see* Am. § 2255 Mot. at 25 ¶ 45, Armstrong simply does not allege he would have proceeded to trial had he known then what he knows now. In addition to this gap in his pleading, he had the opportunity at deposition to ask counsel "what . . . was imparted to Armstrong by defense counsel about the sentence possibilities." *Id.* at 26-27 ¶ 48. Armstrong himself, of course, would also have something to say about what he was told, but he does not say it.

With no countervailing allegation pointing to sound reasons for going to trial, the existing record demonstrates not only that Armstrong was not prejudiced by counsel's advice but that he was well-advised to enter into the plea agreement. By doing so, he avoided a potential mandatory minimum sentence of 25 years—20 years if an Information under 21 U.S.C. § 851 had been filed plus a mandatory minimum consecutive five-year sentence under 18 U.S.C. § 924(c)(1)(A). *See also* Presentence Report ¶ 68.

Armstrong's allegations do not support an inference either that counsel's advice was unreasonable or that Armstrong was prejudiced as a result. This claim is denied.

## B. Claims 1 and 2: Sentencing

Armstrong's first and second claims allege that counsel was ineffective for failing to demonstrate that he was in custody in the State of Washington from mid-February to mid-September 2012 and for failing to call as sentencing witnesses co-conspirators Everson and Evans. The two claims are interconnected. Armstrong claims that documentary evidence could have shown he was in jail at a time when Everson and Evans were claiming to have received methamphetamine from him. He believes that proof of his incarceration would have enabled counsel to call witnesses for the purpose of impeaching them. *See* Am. § 2255 Mot. (Doc. 266) at 17-21 ¶¶ 28-36.[2]

This view of what might have been, however, assumes events would have played out under Armstrong's control. On the contrary, as counsel testified in deposition, the United States could have called witnesses to respond or corroborate or supersede Everson's and Evans's testimony. Counsel feared attacking the drug quantity assessed in the presentence report would be "like stepping through a field

---

[2] Armstrong appears to believe his criminal history category would have been lower had counsel proved he was in jail in April 2012. *See* Am. § 2255 Mot. at 8-9 ¶ 14. But he would have received two criminal history points either because he spent seven months in jail, *see* U.S.S.G. § 4A1.1(b) (2013); Presentence Report ¶ 79, or because he was on community supervision when he committed the instant offense, *see* U.S.S.G. § 4A1.1(d); Sentencing Tr. (Doc. 259) at 45:18-47:1, 54:22-55:9. Two points were imposed only once with respect to the Washington jail/community supervision-sentence. *See* Presentence Report ¶ 80; Sentencing Tr. at 57:2-3. Therefore, there was no need to prove on which basis the two points were due. *United States v. Pridgette*, 831 F.3d 1253 (9th Cir. 2016) (Am. § 2255 Mot. Ex. A), is inapposite.

8

of land mines. There were so many folks that said [Armstrong] had so much methamphetamine that I felt the 1.5 [kilograms] or above was actually beneficial." Counsel Dep. (Doc. 273-2) at 16:7-11. Further, counsel believed witnesses called in response to a defense decision to call Everson "could be devastatingly detrimental for Mr. Armstrong" with regard to both drug quantity and Armstrong's role in the conspiracy, *id.* at 18:11-25, because law enforcement reports referred to matters "not reflected in the offer of proof" filed at the time of Armstrong's guilty plea. Armstrong does not and cannot allege that a decision to call Everson and Evans would have produced consequences within his control.

Counsel's approach at sentencing was reasonable. In addition, there is no reasonable probability the outcome would have been better for Armstrong had the co-conspirators been called to be impeached. This claim is denied.

### III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v.*

9

*Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Even assuming Armstrong thought his sentence would be ten years if he pled guilty and twenty if he did not, he does not claim he would have opted for trial had he known then what he knows now. By pleading guilty, he avoided a mandatory minimum sentence of 25 years. He does not identify any prospect of acquittal or conviction on lesser charges had he gone to trial. Neither prong of the *Strickland* test is met.

Armstrong's two sentencing claims are interconnected. First, he alleges counsel should have obtained documentary proof that Armstrong was in jail in April 2012. Second, he claims that, armed with this proof, counsel could have called two co-conspirators to impeach their prior statements with the evidence that Armstrong was in jail at a time when both claimed they were receiving methamphetamine from him. But according to counsel's deposition, many more witnesses waited in the wings and could have provided testimony devastating to Armstrong with respect to both drug quantity and role in the offense. In addition, proving a witness wrong in one respect does not necessarily prove the witness unreliable in all respects. Neither prong of the *Strickland* test is met.

Armstrong's claims that he was deprived of the constitutional right to effective assistance of counsel have no substance. A certificate of appealability is

not warranted.

Accordingly, IT IS HEREBY ORDERED:

1. Armstrong's amended motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 266) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Armstrong files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 15-87-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Armstrong.

DATED this 11th day of October, 2017.

/s/ Susan P. Watters
Susan P. Watters
United States District Court